My name is Carlos Cruz and I represent the petitioners. I apologize for my hoarse voice. I am losing my voice today. But I'm going to do the very best I can to get to this argument. Your Honors, in this case, the Board of Immigration Appeals erroneously denied the petitioners' motion to reopen based on the following three reasons. First, the petitioners' motion to reopen established the prima facie case for cancellation of removal given their United States citizen son's serious medical condition. Second, the petitioners were not required to show that treatment is unavailable in Mexico in order to make a prima facie case for relief. And third, the Board abused its discretion by failing to consider and address all of the evidence attached to the motion to reopen. INA Section 240A-B, Your Honor, provides that an applicant must establish, inferred in part, that his United States citizen son would suffer an exceptional and extremely unusual hardship in the event of his removal. Within the motion to reopen context, all that is required from petitioners is a showing of prima facie eligibility. Here, the evidence that was presented with the motion to reopen established the prima facie case for relief. The evidence included the following. First, there was a letter from the UCLA Medical Center attached to the motion to reopen. This letter was prepared and signed by a senior clinical social worker in pediatrics with the UCLA Medical Center. A social worker was the part that got me. There were no medical records, no doctor's records. Is a social worker someone that can make diagnoses? I've never known social workers that could make diagnoses of various types of things. You're correct, Your Honor. The social worker can make a diagnosis. The social worker is responsible, as in a case like this one, to make sure that the child receives the social services, the medical services, the counseling services, and whatever other services may be needed to deal with the condition once a case is assigned to an LCSW, a licensed social worker, as it was done in this particular case. Now, the letter is not just from the social worker's office. It's actually on the letterhead from the Olive View UCLA Medical Center, a well-recognized medical institution. The letter does provide for a diagnosis reached by a doctor with the UCLA Medical Center. The letter addresses a condition known as vitiligo, and it defines what it is, that it causes. What's the name of the doctor that made the diagnosis? Your Honor, that is in the letter at page 21. I can certainly get the record out and provide you with that, but it's at page 21 of the record. The social worker actually makes reference to the doctor and says that the doctor made a diagnosis regarding this condition, a condition that causes severe discoloration and skin markings on various parts of the body, including the face. It addresses the psychological issues that also relate to this condition, and more importantly, it provides that it requires ongoing treatment for life, treatment that the child was already receiving that this senior social worker certainly documented in that letter. So we have a letter from a social worker who makes reference to a diagnosis made by a doctor who is employed by the UCLA Medical Center. Excuse me. Yes, Your Honor. The letter actually says he has been receiving treatment for this disease, and his general physician is Dr. Mohamed Malik. It doesn't say that Dr. Malik was the doctor who diagnosed him. Is that your understanding, or do you know that Dr. Malik in fact diagnosed him for this disease? Your Honor, I guess my assumption there is because he's receiving treatment from this particular doctor, that this would be the doctor who made that diagnosis. The letter does say that treatment is ongoing, that it is lifelong treatment that will be required, and that this is the doctor who is providing that treatment. I certainly wish the petitioners would have presented a letter signed by the doctor, because that would have been medical evidence. But these sort of cases, health insurance is not always the very best. We have submitted the type of documents that these folks are able to obtain from these medical facilities. The BIA was focusing on the idea that the letter also doesn't say that he couldn't get that care in Mexico. That's correct, Your Honor. And the BIA does make that note. My position to the court is that the BIA has never expressed in any of its decisions, and there are only three published BIA decisions dealing with cancellation of removal, that an applicant must establish that treatment is not available in Mexico in order to establish prima facie case for relief. What's important in a case like this to determine whether the child will suffer the required hardship in the absence of the treatment he is already receiving in the United States. In fact, the published article that I submitted, along with the motion, to compensate for the lack of the doctor's letter addresses that treatment and deals specifically with what the consequences of the TILIC are for a child such as petitioner's son in this case. Now, that was in reference in the board's decision, and that's the only medical information which was made available. We also submitted pictures regarding the child's severe condition to depict the condition affecting this child, and although that was addressed, again, the article from the National Institute of Health, a nine-page article, is nowhere mentioned in the BIA's decision. What case do you rely upon that you have a prima facie case when you don't have to show that the very same treatment can be received in the country where the person will be going? Your Honor, that's the problem. I don't have a case, nor is there a case that says the opposite. The BIA, in this case, despite the number of cases involving cancellation of removal, and there are hundreds that are considered on a weekly basis in immigration court here in Los Angeles, has only ruled on three, has only published three cases dealing with the standard for purposes of cancellation of removal, so it's practically impossible for petitioners to determine what factors the board will consider relevant and what factors are not dispositive on the issue of hardship when the board hasn't published a decision dealing with that issue. Did the board address the skin disease issue at all? Your Honor, the board mentioned the skin disease issue in its decision, yes, but it did not mention the article from the National Institute of Health. It doesn't address the psychological and emotional impact of the condition of the child. It doesn't address the fact that research is being conducted as we speak to deal with this condition for which there is no cure, that they are looking for ways to better address the condition affecting this child. Now, this is a condition that requires specialized research, and although the evidence, the record doesn't show what treatment is available in Mexico, certainly the article, along with the letter and the pictures depict the condition which is serious and requires ongoing medical treatment. The other point here, Your Honor, is this, that even if treatment is available in Mexico, that treatment may not be available to this child. Now, the government argues that Petitioner didn't raise that issue to the court, to the BIA, regarding unavailability of treatment for lack of resources. But again, the BIA has never previously expressed that we must show that Petitioner's son would be unable to receive such treatment in Mexico. Excuse me, because I guess the question is that the statute says that the Petitioner must establish that the removal of the alien would result in the hardship to the child. And so it seems inherent in the statutory requirement to show that, not just that the person is being treated for a serious disease or ailment in the United States, but that the removal would have that effect, which seems inherently to require a showing  Your Honor, there are some conditions that, unfortunately, require resources and require the sort of research that's unavailable in other countries. Now, I can't argue that the record contains information regarding that. What I can argue is that the record shows that even if treatment is available, that treatment for this child would not be a reality. During her proceedings, the female Petitioner testified that she would not be able to work in the fields anymore because of her age and her poor health. They would not be able to afford transportation in Mexico. When asked about why she couldn't take their car to Mexico, she simply answered, because the poor car breaks down. Her education only extends to the sixth grade, thereby limiting her employment options in Mexico. They don't own property in Mexico. They don't own any property in the United States. So there's not the family that can sell any assets to procure the necessary treatment needed for their son. And so in a case such as this one, even if treatment was available, assuming we come to that conclusion, in this case, this particular family, given the absence of any resources, would be unable to provide their child with the medical treatment and the psychological counseling that he will need to deal with this condition. And lastly, Your Honor, as this Court held in CEDA v. INS, because the Board failed to address all of the evidence attached to the motion to reopen, specifically the nine-page article from the National Institute of Health, this Court should find that the Board abuses discretion in failing to address this evidence and therefore remand the case to the Board. Thank you. Good morning. May it please the Court. My name is Jeff Leis on behalf of the Respondent. In this case, there's actually two different decisions which were appealed to this Court. There was the merits decision, which is the 04 number case, and there's also the motion to reopen, which is the 06 number case. I'll address the motion to reopen because that was just addressed by opposing counsel. In this case, Petitioners filed a motion to reopen based on ineffective assistance of counsel because their previous counsel did not alert them that they could file a motion to reopen based on their child's new disease, Vigilio or Vigilio, however it's pronounced. With their motion to reopen, they did not present any medical records. There's no evidence that they presented. I'm sorry. I missed any what? Any medical records, any evidence of the severity of the child's condition, any evidence that in contrary to what opposing counsel has said, I believe the Board in matter of Andazola did in fact say that absence evidence of the treatment could not be procured, and I believe it was Mexico and I believe the disease was asthma in that case. They cannot show that the records of the hardship result. In this case, it's completely speculative that, A, the treatment's not there, B, that they could not procure that treatment, or C, that even if the treatment is there, they could not somehow pay for it. Again, it's all speculative that this would not be possible. Counsel, didn't they submit evidence that the child has the condition and evidence that he was being treated by a facility that could do research? I believe that he was being treated by a facility that could do research, but there was no indication that he was actually going to be the research subject or that in any way if this research was any way limited to just that hospital wouldn't he, you know, send to other hospitals in this country or other countries as well. And the only evidence we have in here is a letter from a doctor saying the child has a condition and it would require lifelong treatment. There's no evidence in the record what that treatment itself is. Okay. Well, what's the best case that you cite that would say that on the motion to reopen he has to show lack of treatment possibilities in Mexico? Because part of what the family is arguing is that they can get the treatment in the U.S., but they wouldn't be able to get the treatment in Mexico because of lack of resources or whatever. If the board addressed the issue, I would think we wouldn't have jurisdiction to review it. But right now we're just looking at whether the board had to reopen it and address the issue. I believe the case that's most on point is Maduro-Vandizola, which I believe the board said that absent evidence that this treatment is not available in Mexico, you cannot have a case for cancellation removal. In that case, I believe it was an issue of asthma and whether or not asthma medication or asthma treatment was available in Mexico. I would argue that, I mean, the mere fact that you're taking a child out of the best possible circumstance does not mean that they would have exceptional and extremely unusual hardship. I mean, if they can procure the treatment in Mexico, there's not a great deal of difference or there's no allegation that, you know, the treatment they could receive in Mexico would be substandard or anything like that. So the mere fact that he's getting treatment here does not preclude the fact that even if he goes back to Mexico, he would not be able to get treatment there. And I believe that's what the Vandizola case was arguing, is that if there is evidence or there's a lack of non-evidence that he can in fact get this treatment, then that in a lot of ways alleviates the concerns that would be had by having this child in that environment. Going back to the merits appeal, there's three different issues in this case. There was three different Petitioners, the father, the mother, and the daughter. The daughter does not have a qualifying relative. Therefore, she's statutorily ineligible for cancellation. The mother was they would decide that she not had, she didn't, excuse me, didn't demonstrate the requisite hardship. And pursuant to Romero-Torres and the following cases, there's no jurisdiction to hear that issue. The remaining issue is similar to the case that was just heard by the Court, where the Petitioner, the male Petitioner, was apprehended in Los Angeles at his work site, testified that he was given the chance to go before an immigration judge, but said that he wanted to go back to Mexico taking voluntary departure because it was quicker, was returned to Mexico and then came back. We actually briefed this case right after Tapia came out and prior to Ibarra-Flores came out. However, we still feel that this is distinguishable because, A, it's not a turnaround at the border. There's actually another interior apprehension and then subsequent removal to Mexico. And in this case, he also did admit that, yes, he was given the chance to go before an immigration judge, but declined to do so because it was quicker to go back to Mexico versus taking voluntary departure. I believe the case that's most unpopular in that regard would be Vasquez-Lopez, which is a case that involved an apprehension in Phoenix and a subsequent voluntary departure back to Mexico. If there are no further questions. Kennedy. What part does this report that counsel says was attached to his papers, what role does that play in the overall makeup of our decision? The report referring to the nine-page report about the history of the condition, it's background information regarding the condition. Nothing in there that indicates this is in any way directed towards him. It doesn't discuss his actual aspect of the condition. There's no discussion of severity of the condition or how it applies to him. I mean, really addressing him, there's no we're not alleging that the condition doesn't exist or that he doesn't have the condition. It's whether or not the condition is severe enough to rise to the level of the requisite hardship, and we believe it is not. As a matter of fact, the report says this condition has these symptoms, that these are possible treatments. Things like that is in no way directly applicable to this case because it doesn't reference the Petitioner and nowhere in the Petitioner's other documentation is there any evidence that supports, you know, the fact that it's a child and really because he has the condition with no evidence regarding the severity, the treatment he's taking or the lack of treatment, that it would actually rise to the requisite hardship. Thank you. There are no further questions. Based on the aforementioned reasons, we request the petition to be denied. Thank you. I think you have about 30 seconds left. I'll leave my comments to the voluntary departure issue. Although I didn't address that issue, I can certainly tell the Court that the record doesn't support a finding that Mr. the Petitioner in this case, the lead Petitioner, understood exactly what he was accepting. What he did say in the record was that, yes, I was given the opportunity to appear before the Immigration Court, but he then stated, I think so, maybe. One question further about the details regarding that, I'll answer instead, I don't remember very well. It's been 10, 11, 12 years. I can't remember very well. And that was the extent of the testimony he provided regarding that voluntary return. So there's no evidence offered by the government, nothing in the record to suggest that he was granted voluntary departure under the threat of deportation in this case. And lastly, there is a substantial difference between asthma, a very common condition, and vitiligo, a condition that's set forth in the report that only affects 1 to 2 percent of the entire population. And given this rare condition, clearly, in this case, the Court should find that the VA should have addressed all of the evidence attached to the motion, and that in failing to do so, the Board abused its discretion. Thank you, Your Honors. This case is submitted. The next case is Ahir V. Mukasey.
judges: Wallace, Gould, Ikuta